## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **DELORES HAMILTON et al.,** | Civ. No. 2:12-4196 |
| **Plaintiffs,** | (KM)(MAH) |
| **v.** | |
| **PRUDENTIAL INSURANCE CO. OF AMERICA et al.,** | **OPINION** |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on the motions of Defendants Prudential Insurance Co. of America ("Prudential"), Secretary of Veteran Affairs Eric. K. Shinseki, the Department of Veteran Affairs ("VA"), and the United States of America ("US"), to dismiss the First Amended Complaint ("FAC"). (Docket Nos. 29, 30). For the reasons to set forth below, these motions to dismiss are **DENIED**.

### I.    BACKGROUND

Plaintiffs Delores D. Hamilton, Jesse N. Hamilton, Derrick Seymour, Cynthia Seymour, and Jalissa Thomas[1] bring this FAC on behalf of beneficiaries of the Servicemembers' Group Life Insurance Act, 38 U.S.C. § 1968 ("SGLIA"), alleging that Defendants have avoided paying the benefits of the insurance program to beneficiaries whose insureds were disabled at the time of deactivation from the armed forces and remained disabled until their deaths. (Docket No. 14). The FAC asserts claims against all Defendants under the Equal Protection Clause of the Constitution of the United States (Counts 1-2). Against Prudential only the FAC asserts claims of violations of 38 U.S.C. §

---

[1]    The original Complaint was brought by two additional plaintiffs. Mathew D. Ecker filed a notice of voluntary dismissal on August 9, 2012 (Docket. No. 9), and Jeremiah Scott Whiting entered a notice of voluntary dismissal on September 20, 2012 (Docket No. 13).

1968(a)(1)(A)(ii) and 38 C.F.R. § 9.1(j) (Count 5); violations of various state law contractual duties (Counts 3-4, 6, 7); and fraud (Counts 8-9). FAC ¶¶ 93-164.

As I must, I take the facts as alleged to be true solely for purposes of this motion to dismiss.

## A. Statement of Facts

For military service members and veterans, and to provide special protection for their beneficiaries, Congress created two group life insurance programs: the Servicemembers Group Life Insurance ("SGLI") plan for active members, and the Veterans Group Life Insurance ("VGLI") plan for veterans. FAC ¶¶ 2, 4; 38 U.S.C. § 1965. Prudential Life Insurance has been the carrier for these policies since 1965. The policyholder is the VA. *Id.* The insurance premiums for SGLI are collected from service members by the United States; the premiums for VGLI are paid directly to Prudential by veterans. *Id.* ¶ 4.

SGLI and VGLI are guaranteed by the United States. Therefore, when service members die at higher rates than envisioned by Prudential's risk calculations (in particular, during wartime), the United States supplements the payouts in order to make sure that Prudential does not lose profits. *Id.* ¶ 3.

When service members leave the military, they can convert from SGLI to VGLI of equal value. *Id.* ¶ 5. To convert to VGLI, the service member must submit an application and pay the first premium within 120 days of ending active service. *Id.* ¶ 16. If the service member is disabled at the time of deactivation, however, SGLI remains in force, pursuant to 38 U.S.C. § 1968(a)(1)(A)(ii). *Id.* ¶¶ 5, 18. Under this provision, the service member is then provided with continuous SGLI coverage for two years or until the end of the disability—whichever is earlier. *Id.* ¶ 18. Disability is defined under 38 C.F.R. 9.1(j) as "any impairment of mind or body which continuously renders it impossible for the insured to follow any substantial occupation." *Id.* ¶ 19. The criteria for purposes of this section are established by the Secretary of Veteran Affairs (the "Secretary"). *Id.*

The Secretary is required to issue guidelines determining who is disabled. A disability determination, of course, may determine whether beneficiaries are entitled to receive SGLI policy benefits where the service member did not convert to VGLI within 120 days of separation from the service. *Id.* ¶ 6. The Secretary has the power to declare that a particular service

member is disabled for the purposes of an SGLI payment, and to direct Prudential to issue the benefit. *Id.* ¶ 7.

Plaintiffs allege, for example, that when the death of a veteran has resulted in significant negative publicity, the Secretary has ordered Prudential to pay the benefit to the service member's beneficiary under a policy created retroactively for that purpose. *Id.* ¶ 8. When the Secretary orders Prudential to pay benefits to such a beneficiary, it is allegedly acting as an agent of the Secretary, and not as an insurer. *Id.* ¶ 9. Such payments, Plaintiffs allege, are made "outside the statutory scheme [of the SGLIA] as well as outside the contract" between the VA/United States and Prudential. *Id.* ¶ 28.

The FAC cites several examples of such payments—including payments to former plaintiffs in this case who have since voluntarily dismissed their claims. Michael Ecker, whose survivor, Mathew D. Ecker, was formerly a plaintiff in this case, was discharged from active service in the United States Army on December 24, 2006, and committed suicide on August 28, 2009.[2] FAC ¶ 30. Ecker had been found 70 percent disabled: 50 percent for PTSD and Traumatic Brain Injury, ten percent for lumbosacral sprain, and ten percent for right ankle strain. *Id.* ¶ 35. Prudential initially denied the claim because Ecker was not covered by a VGLI policy when he died. *Id.* ¶ 33. Plaintiffs allege that he had not been notified that he could convert his SGLI policy to a VGLI policy after he was discharged. *Id.* ¶ 31. After the filing of the original complaint in this case, Prudential notified counsel that it would pay a SGLI benefit for Michael Ecker to his parents. *Id.* ¶ 47.

Chad Aaron Whiting, whose survivor, Jeremiah Whiting, was formerly a plaintiff in this case, served in the United States Army until March 16, 2008. On November 28, 2008, he committed suicide and killed his wife, Dana Marie Whiting.[3] *Id.* ¶ 50. Whiting had not converted his SGLI policy to a VGLI policy and his family had not been notified of the possibility of a payout of his SGLI policy at the time of his death. *Id.* ¶¶ 52-53. After the filing of the complaint, Prudential notified counsel that it would pay a SGLI benefit for Chad Aaron Whiting to his estate. *Id.* ¶ 59.

---

[2]   This time period is outside the 2 year extension authorized under 38 U.S.C. § 1968.

[3]   Whiting died within the two year period authorized for SGLI coverage in 38 U.S.C. § 1968. The FAC, however, does not state whether Whiting had been found disabled.

The FAC also refers to two other claims paid outside the statutory two year disability extension: (1) an SGLI payment for Jeff Hacket, who died 27 months after he was deactivated, and (2) a VGLI payment for Walter Scott Eiswert, who died 50 months after deactivation from active service and less than a year from his separation from the Individual Ready Reserves ("IRR"). Docket No. 14-12.

Plaintiffs argue that these actions, resulting in payments to some beneficiaries and not to others, are arbitrary and capricious, that they are an abuse of discretion, and that they violate the Equal Protection clause. *Id.* ¶ 10. Of course they seek, not to invalidate payments that have been made, but to extend similar benefits to other potential beneficiaries. Plaintiffs allege that Prudential's refusal to pay the benefit to beneficiaries of SGLI policies who were entitled to the benefit because their insureds were disabled at the time of death (1) violates 38 U.S.C. § 1968 and (2) constitutes a breach of contract, the covenant of good faith and fair dealing, unjust enrichment, and a breach of fiduciary duty/constructive trust. *Id.* ¶ 12.

## B. Parties

Defendant Prudential Insurance Company ("Prudential") is a corporation organized under New Jersey law and doing business throughout the United States. FAC ¶ 78. Prudential operates divisions entitled Office of Servicemembers' Group Life Insurance and Veterans' Group Life Insurance Services.[4] *Id.* Prudential is the insurer of the SGLI and VGLI programs, which are operated from Prudential's Roseland, New Jersey office. *Id.*

Defendant VA is a cabinet department in the Executive Branch which supervises and sets parameters for Prudential's administration of the SGLI and VGLI programs in compliance with 38 U.S.C. § 1985 et seq. *Id.* ¶ 80. Defendant Eric K. Shinseki is the Secretary of Veteran Affairs, with offices in Washington, D.C. *Id.* ¶ 79. Pursuant to 38 U.S.C. § 1965 et seq., the Secretary must provide criteria and must determine whether deactivated members of the armed forces or members on active duty for training are disabled for purposes of SGLI coverage. *Id.* Defendant US is the ultimate policyholder of SGLI and VGLI and makes certain that the insurer is at all times sufficiently funded to cover the costs of the programs regardless of whether the United States is at war. *Id.* ¶ 81.

---

[4] These are not legal entities separate from Prudential. FAC ¶ 78.

Plaintiffs Delores D. Hamilton and Jesse Hamilton are residents of California, and are the surviving mother and brother of the late William Elias Hamilton. FAC ¶ 70. William Hamilton served in the 82nd Airborne Unit stationed in Fort Bragg, North Carolina until he was discharged on September 16, 2005. *Id.* ¶ 71. He was hospitalized nine times in the local VA clinic following his discharge because of severe post-traumatic stress disorder ("PTSD"). *Id.* He was not able to hold any job after the date of his discharge, and the VA determined that he was 100% disabled. *Id.* On May 16, 2010, after leaving the VA Hospital, he committed suicide by stepping in the path of a train. *Id.*

Delores Hamilton testified that her son did not receive any notice from Prudential that he could have converted his SGLI policy to a VGLI policy. *Id.* ¶ 72. Delores and Jesse Hamilton filed an application for SGLI or VGLI benefits with Prudential on August 31, 2011. *Id.* In the FAC, they allege that Prudential failed to acknowledge receipt of the application. *Id.*; Compl. Exh. 3. After the filing of the FAC, Prudential responded to the Hamilton Plaintiffs by letter dated November 6, 2012, denying their claim because it was outside of the statutory coverage period. Prudential Brief (Docket No. 30-1) at 7.

Plaintiffs Derrick and Cynthia Seymour are residents of Kissimmee, Florida, and the parents of the late Carey David Seymour. FAC ¶ 73. Plaintiff Jalissa Thomas resides in Myrtle Beach, South Caroline and is the mother and legal guardian of Masine Carey Seymour, the daughter of the deceased. *Id.* Carey Seymour enlisted in the United States Army Reserves on October 10, 2003. He was placed on active duty on January 28, 2005, and deployed to Iraq. *Id.* ¶ 74. He was awarded the Army Achievement Medal, the National Defense Medal, the Global Terrorism Medal, the Iraqi Campaign Medal, and two ribbons for his services. *Id.* He was honorably released from active duty on April 30, 2006, and assigned to the US Army Reserves Control Group on May 1, 2006. He remained a member of the Individual Ready Reserves ("IRR") until his death on April 25, 2007.

Carey Seymour suffered from PTSD which culminated in his suicide. *Id.* Cynthia Seymour testified under oath that he was totally disabled between the time of his deactivation on April 30, 2006, and the time of his suicide. *Id.* ¶ 76. As a service member, Carey Seymour carried SGLI coverage. On December 21, 2009, Derrick and Cynthia Seymour and Jalissa Thomas (on behalf of Masine) filed applications with Prudential to receive the SGLI benefit. *Id.* ¶ 75. Prudential denied the claim on January 29, 2010, stating that it had sent three

mailings to Carey Seymour at the address provided in his discharge statements, informing him of his opportunity to convert to a VGLI policy, but that he had not done so. *Id.* The Seymours have provided Prudential with Carey Seymour's medical records and the sworn deposition testimony of Derrick and Cynthia Seymour and Jalissa Thomas. *Id.* ¶ 77.

Prudential asserts that it sent a letter on October 8, 2012 (after this action was filed) to the Seymour family's counsel, seeking additional medical documentation, including the names of Carey Seymour's treating physicians, dates of treatment, identification of medical conditions for which treatment was sought, and the dates Seymour was able to work. Prudential Br. (Docket No. 30-1) at 8. At the time Prudential filed its motion to dismiss, January 1, 2013, it had not received a response.

## C. Procedural History

The Seymour and Hamilton Plaintiffs, along with Jeremiah Scott Whiting and Mathew D. Ecker, filed the original complaint in this action on July 9, 2012 (Docket No. 1). The case was originally assigned to Hon. Faith S. Hochberg, U.S.D.J. The case was reassigned to me on August 1, 2012.

Mathew Ecker entered a notice of voluntary dismissal on August 9, 2012 (Docket No. 9). Jeremiah Scott Whiting entered a notice of voluntary dismissal on September 20, 2012. (Docket No. 12). The remaining Plaintiffs filed the FAC the same day, before any Defendant had answered or otherwise responded to the complaint. (Docket No. 14). On January 7, 2013,[5] the Government Defendants (the United States, VA, and Secretary Shinseki) and Prudential filed separate motions to dismiss the FAC. (Docket Nos. 29, 30).

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because it arises under the laws and Constitution of the United States. The Court has supplemental jurisdiction over the state law claims in the FAC pursuant to 28 U.S.C. § 1367.

---

[5]    The Hon. Patty Shwartz, now a Judge on the Court of Appeals, but then a Magistrate Judge, was assigned to the case. She granted a stipulated Order extending the time for Defendants to respond to the FAC until January 7, 2013. (Docket No. 28).

## II.    DISCUSSION

The motions to dismiss by the Government Defendants and Prudential will be denied as to the named Plaintiffs for the reasons discussed below. I will reserve decision as to the viability of the class claims, an issue more appropriately considered later.

Defendants move to dismiss the FAC based on lack of subject matter jurisdiction and failure to state a claim. The Government Defendants argue that the Court does not have jurisdiction of the case because it challenges benefits determinations made by the VA. Gov't Br. (Docket No. 29-1) at 2. Prudential argues that the Seymour Plaintiffs' claim is not ripe. Prudential Br. at 29. These jurisdictional arguments are properly considered under Fed. R. Civ. P. 12(b)(1). In addition, both Defendants assert that the FAC fails to state a claim for relief and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### A. Jurisdiction

Rule 12(b)(1) challenges may be either facial or factual attacks. See 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438. For the purposes of this motion to dismiss, the Government Defendants' argument—which challenges the authority of the Court to hear Plaintiffs' claims as a matter of law—will be treated as a facial attack.

### 1. Jurisdiction Under 38 U.S.C. § 511

The Government Defendants argue that the FAC challenges decisions by the VA ordering its private insurance carrier to pay benefits to Plaintiffs. Review of such a decision, they say, is restricted to a specialized administrative and judicial process. Gov't Br. at 2-3, 31. The VA does not concede that it made "any decision at all" to deny a claim by Plaintiffs for insurance proceeds, but it nonetheless argues that review of any such denial would be outside the purview of this Court's jurisdiction. *Id.* at 31-32.

7

By statute, the Secretary of Veteran Affairs is granted authority to decide all VA determinations affecting the provision of benefits. The Secretary's decisions are considered "final and conclusive" and may not be reviewed by "any official or by any court, whether by an action in the nature of mandamus or otherwise." 38 U.S.C. § 511. Pursuant to this provision, courts have recognized that a challenge to an individual VA benefits proceeding is beyond the jurisdiction of the federal courts, even when the challenge is constitutional in nature. *See Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1023-26 (9th Cir. 2012), *cert denied*, 133 S. Ct. 840 (2013) (discussing survey of circuits); *Duke v. United States*, 305 F. Supp. 2d 478, 490 (E.D. Pa. 2004) (noting that Third Circuit has yet to rule on issue, but federal courts have repeatedly held that they lack jurisdiction over constitutional challenges to VA benefits decisions).

Section 511 does not, however, preclude this Court from asserting jurisdiction over the Plaintiffs' claims in the FAC. First, Section 511 contains an express exception for cases "founded upon" 38 U.S.C. Chapter 19, Subchapter III. That is the subchapter governing the SGLI and VGLI programs. 38 U.S.C. § 1975. Indeed, the United States District Courts are granted original jurisdiction of any civil action or claim against the United States founded upon Subchapter III. *Id.* Plaintiffs' claims here are based on the Defendants' administration of SGLI and VGLI benefits and are clearly covered by this statutory exception. The Government Defendants adopt a narrow—too narrow, in my view—reading of the exception and argue that Plaintiffs' claims arise from the Constitution and not from the statute. Gov't Br. at 34. The Plaintiffs' claims, constitutional and statutory, are based on the Defendants' administration of the SGLI and VGLI insurance programs and are covered by 38 U.S.C. § 1975.

Furthermore, even if the statutory exception did not apply, I would find that the claims asserted in the FAC do not run afoul of the general limitation imposed by Section 511. The FAC essentially alleges that the Secretary and VA are not complying with the statutory scheme established by Congress in the SGLIA to govern the insurance programs available to active service members and veterans. FAC ¶ 28. In fact, the FAC cites several cases in which the VA allegedly denied benefits or findings of disability, but then later directed Prudential to pay a SGLI or VGLI benefit anyway. *See* FAC ¶¶ 47, 59; Docket No. 14-12. Plaintiffs contend that Defendants have awarded or denied benefits without regard for the service members' actual eligibility for insurance benefits, thus acting outside the scope of the statutory scheme. Such claims do not seek

review of any individual veteran's VA benefits proceeding, but rather challenge the Defendants' overall administration of the SGLIA.

In sum, Plaintiffs' claims do not exceed the limits established by 38 U.S.C. § 511 as to individual VA benefits determinations. This Court may appropriately exercise jurisdiction over them.

### 2. Ripeness of the Seymour Plaintiffs' Claim

Prudential argues that the claim of the Seymour Plaintiffs is not ripe because a final determination has not yet been made. Prudential Br. at 29. The FAC alleges, however, that Prudential denied the Seymour Plaintiffs' claim for SGLI benefits on January 29, 2010. FAC ¶ 75. The Seymour Plaintiffs filed this action based on the denial of their claim for SGLI benefits. Their submissions include their sworn deposition testimony and Carey Seymour's medical records.

Prudential's argument is based on a letter that it sent to the Seymour Plaintiffs on October 8, 2012—*after* the initial complaint was filed in this case— asking for further documentation. There is no indication anywhere that Prudential communicated to the Seymours any willingness to reconsider their benefits claim at any time before the filing of this action. Prudential cannot retroactively render the action unripe by requesting more medical records. Of course, should Prudential reconsider and award benefits, a mootness issue might arise.

### B. Failure to State a Claim

The Defendants also assert that the FAC fails to allege a cognizable claim. *See* Gov't Br. at 9; Prudential Br. at 18, 24. To state a valid claim for relief, the Complaint must contain: (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought. Fed R. Civ. P. 8(a).

The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in favor of the Plaintiff. *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).

The FAC includes two counts of fraud against Prudential. For claims of fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement, over and above that of Rule 8(a). Specifically, it requires that "in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind," however, "may be alleged generally." *Id.* That heightened pleading standard requires the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal quotation and citation omitted).

The FAC sufficiently states claims for relief. It consists of nine counts: a Fourteenth Amendment Equal Protection claim against both the Government Defendants and Prudential (Counts 1 and 2); violations of 36 U.S.C. § 1968 against Prudential (Count 5); and common law contract, quasi-contract, and fraud claims against Prudential (Counts 3-4, 6-9).

### 1. Equal Protection Claim

Plaintiffs assert a "class of one" equal protection claim against the Government Defendants and Prudential, acting as an agent of the VA and Secretary. FAC ¶¶ 94, 100. Defendants argue that Plaintiffs cannot maintain a claim under this theory. Gov't Br. at 9; Prudential Br. at 19.

A successful equal protection claim may be brought by a "class of one" where the plaintiff alleges that he or she has been intentionally treated differently from other similarly situated persons without a rational basis.[6] *Village of Willowbrook v. Olech*, 528 U.S. 562, 565, 120 S. Ct. 1073 (2000) (citing *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cnty.*, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989)). As the Supreme Court

---

[6]     "Class of one" should not be taken to suggest there can be one and only one plaintiff or injured party. The term is intended to differentiate such a claim from, for example, a claim of racial discrimination brought on the basis of the plaintiff's membership in a protected class.

has explained, "[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Id.* (internal citations omitted).

The FAC may fairly be construed as alleging that the Defendants intentionally denied some beneficiaries' claims for SGLI and/or VGLI benefits, while granting others, all the while acting outside the scope of the statutory criteria established by 38 U.S.C. Chapter 19, Subchapter III. FAC ¶¶ 94, 100. Defendants call these decisions "subjective, individualized determinations"; Plaintiffs call them arbitrary departures from the statutory scheme. *See* Gov't Br. at 12. The FAC cites several examples where the Secretary directed Prudential to pay death benefits even though it did not appear that the statutory criteria had been met: the service member had not been found totally disabled, the two year SGLI disability extension had passed, or the service member had not converted his policy from SGLI to VGLI. *See* FAC ¶¶ 23, 26, 36, 68; Docket No. 14-12. Such *ultra vires* grants of benefits to similarly situated beneficiaries and denials to others, including Plaintiffs, are alleged to have been "arbitrary and capricious" and without a rational basis. *Id.* ¶¶ 10, 26, 28. Such allegations fall within the scope of the "class of one" doctrine, and set forth a claim. *See Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 602, 128 S. Ct. 2146 (2008) (arbitrary classification claim required clear standard against which departures could be "readily assessed").

The reasoning of the Supreme Court in *Willowbrook* applies by its terms to claims against the Government Defendants, but it also is alleged to apply to Prudential. Plaintiffs' constitutional claim against Prudential is limited to its actions as an agent of the United States in administering the SGLI and VGLI programs. FAC ¶ 101. Plaintiffs allege that Prudential acted as an agent whenever it followed the direction of the Secretary to pay out a policy outside the terms of the statute and the SGLI or VGLI contracts. *Id.* ¶¶ 17, 23-25. The facts alleged by Plaintiffs, if true, state a claim against Prudential as a "duly constituted" agent. *Willowbrook*, 528 U.S. at 564. Prudential is thus a proper defendant to the equal protection claim based on the facts alleged.

A "class of one" claim may present formidable difficulties of proof. For purposes of a motion to dismiss, however, I must take the allegations as true. Those allegations are sufficient to state a claim for relief under traditional equal protection analysis. *Willowbrook*, 528 U.S. at 565. The motion to deny the equal protection claims in Counts 1 and 2 is denied.

11

## 2. Violation of the SGLIA -  38 U.S.C. § 1968(a)(1)(A)(ii) (Count 5)

The FAC alleges that, pursuant to 38 U.S.C. § 1968(a)(1)(A)(ii), Prudential had an affirmative duty to pay the full amount of the death benefit to Plaintiff beneficiaries upon the death of the SGLI or VGLI insured. FAC ¶ 124. Plaintiffs claim that they and similarly situated individuals are entitled to receive the benefits of the policies held by the insureds, and they seek the full value of those policies plus interest and costs. *Id.* ¶ 125. Prudential argues that this count should be dismissed as to the Hamilton Plaintiffs because William Hamilton died more than four years after his separation from the military and was not covered by SGLI or VGLI at the time of his death. Prudential Br. at 28.

Section 1968 addresses SGLI, and governs the duration and termination of coverage. It allows an active member's SGLI coverage to extend past the point of separation from active service under certain conditions. Subsection (a)(1)(A) states that coverage shall cease for a member on active duty or active duty for training 120 days after the separation or release, "unless on the date of such separation or release the member is totally disabled, under criteria established by the Secretary." In such a case, the insurance shall cease on the *earlier* of "(i) the date on which the insured ceases to be totally disabled" or "(ii) the date that is two years after the date of separation or release from such active duty or active duty for training"—but in no event before the end of the 120 days. 38 U.S.C. § 1968(a)(1)(A).

Section 1977 addresses VGLI, and it also contains an exception preserving coverage that might otherwise terminate. The exception applies to a a member or former member who was mentally incompetent on the date he or she first became insured under VGLI and dies within one year of that date. Under those circumstances, the insurance shall be deemed valid and in force at the time of death, even if premiums for the policy were unpaid. 38 U.S.C. § 1977(c). This provision allows the service member's SGLI policy to be automatically converted to a VGLI policy without payment of the initial premium as normally required. *See* 38 U.S.C. 1968(b)(2).

Prudential asserts that Section 1968 provides no basis for Hamilton's post-separation coverage outside the two exceptions just described. Prudential Br. at 28. I agree with Prudential that if Hamilton was not covered by a SGLI or VGLI policy at the time of his death, the statutory claim against Prudential under Section 1968 would fail as a matter of law. However, the crux of Plaintiffs' allegations is that the Plaintiffs' insureds *were* covered by such a

12

policy at the time of their deaths and thus were entitled to receive a death benefit. The FAC cites examples where Prudential and/or the VA found that service members similarly situated to Hamilton were found (or perhaps deemed) to be covered by a SGLI or VGLI policy. *See* Docket No. 14-12.

Taking the FAC's allegations as true, I find sufficient facts to sustain the claim against Prudential under Section 1968. The motion to dismiss Count 5 will therefore be denied.

### 3. State Law Claims Against Prudential (Counts 3, 4, 6, 7, 8, 9)

The FAC also asserts state law contract and fraud claims against Prudential. Prudential claims that these claims are preempted by the SGLIA, and that they otherwise fail to state a claim for relief. Prudential Br. at 24, 26.

#### a. Preemption

Prudential's preemption argument does not support dismissal. Two types of preemption potentially apply to Plaintiffs' claims. Field, or implied, preemption applies when federal law "so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Orson, Inc. v. Miramax Film Corp.*, 189 F.3d 377, 381 (3d Cir. 1999) (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)) (internal quotation marks omitted). State law may also be displaced under conflict preemption when the state law in questions presents a conflict with federal law either because "it is impossible to comply with both the state and the federal law" or "the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 382 (internal citations omitted).

The Supreme Court has held that the controlling provisions of the SGLIA "prevail over and displace inconsistent state law." *Ridgeway v. Ridgeway*, 454 U.S. 46, 57 (1981). *Ridgeway*, cited by Prudential in its brief, specifically dealt with Sections 717(a) and 770(a) of SGLIA, under which the insured service member possesses the right to freely designate the beneficiary of the policy and to alter that choice at any time by communicating that decision in writing to the proper office. *Id.* at 56. *See also Clamon-Hess v. Harmer*, 904 F. Supp. 2d 388, 398 (D.N.J. 2012) (citing *Ridgeway* and holding that SGLIA preempted conflicting state law as to designation of beneficiaries).

In addition, a sister district court in this Circuit has dismissed state negligence, contract, and fraud claims regarding the amount of a SGLI benefit

to be preempted under a field preemption theory. *Parker v. Office of Servicemembers' Group Life Ins.*, 91 F. Supp. 2d 820, 826-27 (E.D. Pa. 2000). *Parker* reasoned essentially that Congress left no room for the States in the field of life insurance for members of the armed services, and that the goal of uniformity would be undermined by state law actions.

I am not compelled, on the undeveloped record now before me, to find that Plaintiffs' state law claims are preempted. Prudential has not identified any particular inconsistencies between the SGLIA and the relevant state law. Although courts have found that some provisions of the act to preempt state law, it does not necessarily follow that all state law claims arising from SGLI and VGLI policies would interfere with the purposes and objectives of the statutory scheme designed by Congress. At least at the motion to dismiss stage, I will reject Prudential's preemption argument, subject to reconsideration after further factual development.

### b. Sufficient Pleading

The allegations in the FAC are sufficient to withstand Prudential's Rule 12(b)(6) motion to dismiss the state law contract and quasi-contract claims in Counts 3-4 and 6-7. Plaintiffs have alleged sufficient facts to show that Prudential breached their contractual duties through its administration of the SGLI and VGLI programs and by not paying life insurance benefits to the Hamilton and Seymour Plaintiffs, or similarly situated beneficiaries. These allegations are sufficient to support Plaintiffs' claims in Counts 3-4 and 6-7. *See* Factual Background, Section I.A, *supra.*

Counts 8 and 9, which allege fraud against Prudential, are held to a stricter pleading standard. Under Rule 9(b), Fed. R. Civ. P., a complaint must state with particularity the circumstances constituting the fraud. The purpose of this rule is to ensure notice of the "precise misconduct" with which defendants are charged and to prevent false or unsubstantiated charges. *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (quoting *Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786, 791 (3d Cir. 1984)). Courts should nevertheless apply this rule with some flexibility, particularly as to matters that defendants may have concealed. *Id.* (citing *Christidis v. First Pennsylvania Mortg. Trust*, 717 F.2d 96, 99 (3d Cir. 1983)).

Count 8 of the FAC alleges affirmative misrepresentations and Count 9 alleges fraud by omission against Prudential. FAC ¶¶ 145-164. Plaintiffs allege that Prudential intentionally made consistent and systemic false statements

and omitted or withheld information from the Plaintiffs and other beneficiaries of deceased veterans about the availability of insurance payments to beneficiaries under the disability extension of the SGLIA. *Id.* ¶ 147, 156. They further allege that Prudential knew the information withheld was material to recovery of the insurance benefit, and that it had a duty to disclose the information because of its fiduciary or otherwise "special" relationship with Plaintiffs. *Id.* ¶157-58. Plaintiffs also allege that they and others similarly situated relied on the information they received from Prudential, and as a result many did not pursue the recovery of an SGLI benefit. *Id.* ¶ 149, 159. Plaintiffs were injured because they did not receive the benefits to which they were entitled. *Id.* ¶ 151, 162. *See also* Factual Background, Section I.A, *supra.*

Plaintiffs' allegations regarding Prudential's' alleged misconduct are sufficiently focused to meet the heightened pleading standard for fraud. *See* Statement of Facts, above. The circumstances of the alleged fraud are clearly set forth in the FAC, as is Prudential's alleged intentional conduct. The FAC contains allegations that Prudential misled or misinformed Plaintiffs and caused them to miss deadlines or otherwise miss out on insurance benefits to which they were entitled under the SGLIA. That is sufficient to meet the pleading standard set forth in Rule 9(b) and permit the case to go forward to the discovery stage.

## III.  CONCLUSION

Accordingly, having found that the FAC supports Plaintiffs equal protection claim against the Government Defendants and Prudential, as well as the SGLIA claim and state law claims against Prudential, the Defendants' Motions to Dismiss are **DENIED** as to the named Plaintiffs. I make no determination as to the sufficiency of Plaintiffs' class claims, which would more appropriately be explored after further exploration of the facts behind Plaintiffs' individual allegations.

An Order will be entered in accordance with this Opinion.

Dated:  April 30, 2014

Hon. Kevin McNulty
**United States District Judge**

15